# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Infowhyse GmbH, a German company with limited liability. | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | **Case No. 1:15-cv-11229** |
| Fleetwood Group, Inc., a Michigan corporation, | ) ) ) | **JURY DEMANDED** |
| Defendant/Counter-Plaintiff. | ) ) | |

**<u>INFOWHYSE'S MOTION TO COMPEL FLEETWOOD'S DOCUMENT PRODUCTION</u>**

Plaintiff, Infowhyse GmbH ("Infowhyse"), through its counsel, Synergy Law Group, LLC, moves this Court to compel Defendant to comply with Infowhyse's discovery requests, and in support state as follows:

## Introduction

Infowhyse initiated the discovery processes in this case with 67 narrowly tailored, manageable requests for production to Fleetwood. Fleetwood responded to those requests with repetitive boilerplate objections and a refusal to cooperate that is entirely tone-deaf to the letter and spirit of discovery. After more than three months and nine meet-and-confer communications, Infowhyse regrettably requires the Court's assistance to obtain relevant discovery and progress this litigation.

## Factual Background

This dispute arises out of a Strategic Partnership Agreement ("SPA") dated August 18, 2014 between the parties. (Exhibit A, ECF dk. #28-1.) The principal purpose of the SPA was for Infowhyse to purchase Fleetwood's audience response brand called "Reply®" for the total sum of $1,000,000.00. (Ex. A at Sec. II(A)(1).) Infowhyse agreed to pay Fleetwood a $1.00 royalty for each Reply® brand keypad that it purchased for resale from Fleetwood over ten years until Infowhyse had paid $1,000,000.00. (Ex. A at Sec. II(A)(2).) If, at the end of the 10 year term of the SPA, Infowhyse had not paid Fleetwood the full $1,000,000.00, then Infowhyse could choose to either pay the deficiency amount to complete the purchase or forfeit ownership of the Reply® brand. (Ex. A at Sec. II(A)(3).) Infowhyse would be the exclusive reseller of Reply® brand keypads for the term of the SPA. (Ex. A at Sec. II(H)(1).)

Infowhyse's Amended Complaint alleges four causes of action against Fleetwood. (*See generally* Exhibit B, Am. Compl., ECF dkt. #28.) Count I (Fraudulent Inducement) alleges that

1

Fleetwood induced Infowhyse into the SPA by misrepresenting that it sold approximately 77,000 Reply® brand keypads in the year preceding the SPA. (Ex. B at ¶¶91-114.) Infowhyse relied on the 77,000 sales figure in deciding to enter the SPA and the parties used that number to calculate the $1,000,000.00 purchase price for the Reply® brand. (*Id.*) Count I also alleges Fleetwood misrepresented its ability to produce new Reply® brand products. (*Id.*) Count II (Fraudulent Misrepresentation) alleges that Fleetwood continued to perpetuate the misrepresentations after the parties entered into the SPA to induce Infowhyse to continue performing under its terms. (Ex. B at ¶¶115-130.) Count III (Breach of Contract) alleges seven discrete breaches of the SPA by Fleetwood. (Ex. B at ¶¶131-136.) Count IV (Intentional Interference with Prospective Economic Advantage) alleges that by improperly continuing to sell Reply® brand keypads to third parties after the SPA took effect, Fleetwood is usurping customers from Infowhyse and preventing Infowhyse from reaching the $1,000,000.00 purchase price. (Ex. B at ¶¶137-145.)

Fleetwood filed a Counterclaim alleging three separate counts of breach of contract related to the SPA and two subsequent purchase orders. (*See generally* Exhibit C, Def.'s Countercl.) Count I relates to "Infowhyse's indicat[ion] that it does not intend to move forward with the SPA and that it will not make the $1,000,000 payment required by the SPA." (Ex. C at ¶19.) Further, Fleetwood alleges that Infowhyse "failed and refused to make [] payments required by the SPA" and "failed and refused to restore sales volume of the Reply® brand, in unit and dollar terms, to 2010 levels." (Ex. C at ¶¶24-25.) Counts II and III relate to Fleetwood's allegations that Infowhyse "refused to make the payments required by Purchase Order 2 or Purchase Order 1." (Ex. C at ¶¶18, 32, 39.)

**Infowhyse's Discovery**

On February 26, 2016, Infowhyse propounded 67 Requests for Production of Documents on Fleetwood. (Exhibit D, Pl.'s Req. for Prod.) Infowhyse's requests are as specific as possible in providing Fleetwood with the documents sought, the possible custodians, and the relevant timeframe for the request. In many instances, the result is several requests related to the same topic, but which break out relevant custodians or timeframes to facilitate Fleetwood's search. As one example, the core dispute in this issue is Fleetwood's alleged misrepresentation that it sold 77,000 Reply® brand keypads in its fiscal year ending in 2014, and how Fleetwood accounts for and internally categorizes the keypads it sells. (*See, e.g.*, Ex. B at ¶¶42-57.) Infowhyse's requests for production numbers 4-15, 21, and 23-24 break out by sales of a specific type of keypad (so that Infowhyse can see Fleetwood's accounting practices) for a specific fiscal year. (Ex. D.) In other words, rather than provide a single request for "all sales of keypads from 2010 through the present," Infowhyse attempted to simplify Fleetwood's burden of searching for documents by being as specific as possible. This is only one example of many, designed to illustrate that the number of requests is not at all indicative of oppressive discovery tactics.

**Fleetwood's Responses**

Fleetwood served its Response to those requests on March 25, 2016. (Exhibit E, Def.'s Resp.) In it, Fleetwood objected to all but two of Infowhyse's requests and stated multiple objections to all but seven of those requests. Those objections are a list of the usual suspects: "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence;" "not proportional;" "vague;" "ambiguous;" "otherwise unclear;" and "in Plaintiff's possession." Fleetwood stated that it was withholding documents in response to 51 of the requests, that no documents existed in response to seven requests, and that it would produce documents in

3

response to nine requests. Fleetwood's responses are an exercise in the exact type of "baseless, often abused litany" of objections that, as Your Honor frequently notes, "continue unabated, with the consequent institutional burdens and needless imposition of costs on the opposing party," "[d]espite court's repeated admonitions that these sorts of 'boilerplate' objections are ineffectual." *United Auto Ins. v. Veluchamy*, No. 09-C-5487, 2010 WL 749980, at *5 (N.D. Ill. 2010) (citations omitted).[1]

Infowhyse also has legitimate doubts regarding two of the seven requests to which Fleetwood claims to have no documents. Request number 16 seeks documents related to Fleetwood's representation that it sold 77,000 Reply® branded keypads during its 2014 fiscal year, which is the most important issue for Infowhyse's two fraud counts. (Ex. D.) Infowhyse is aware of at least one responsive document, which is attached to this Motion as Exhibit F: an August 26, 2014 email from Ms. Waller to Mr. Mirchandani that, as alleged in Paragraph 42 of the Amended Complaint, confirms Fleetwood's representation and provides a breakdown of the 76,999 Reply® keypads sold. Request 28 similarly seeks documents related to Fleetwood's admission that it sold only 33,000 Reply® keypads during its 2014 fiscal year. Fleetwood's Responses seem to indicate that it has no accounting documents related to its past sales volume.

### The Parties' Extensive Meet-and-Confer Process

Infowhyse initiated the Rule 37(a)(1) meet-and-confer process by letter dated April 14, 2016. (Exhibit G.) That letter brought to Fleetwood's attention that it had not produced a single document and questioned Fleetwood's application of boilerplate objections to nearly every request. It also explained that Infowhyse issued 67 requests in order to tailor each request, where applicable, to the relevant timeframe, custodians, and subject matter.

---

[1] Pursuant to Your Honor's Standing Order, all cases published only on electronic databases are attached to this Motion as Group Exhibit P.

4

Fleetwood responded on April 21, 2016. (Exhibit H.) Fleetwood disagreed that Infowhyse's requests were narrowly tailored and emphasized that the "sheer volume" of Infowhyse's requests rendered them ineffective.[2] Fleetwood also attempted to improperly shift the burden of demonstrating relevance to Infowhyse. *See Ye v. Cliff Veissman, Inc.*, No. 14-CV-01531, 2016 WL 950948, at *2 (N.D. Ill. Mar. 7, 2016) ("The party who objects to the discovery request bears the burden of showing why the request is improper."). Finally, Fleetwood introduced for the first time the true reason that it is refusing to participate in the discovery process: according to Fleetwood, the existence of an "integration clause" renders undiscoverable all documents predating the agreement underlying this action.

The parties conferred by phone on April 22, 2016. Fleetwood summarily dismissed Infowhyse's document requests as irrelevant and in some instances disproportional, based on Fleetwood's view of the likelihood of success of Infowhyse's claims. At Fleetwood's instance, Infowhyse agreed to detail, request by request, why each request for production concerned relevant, responsive documents even though Fleetwood bears the burden of establishing that any given request is improper. *See Ye*, 2016 WL 950948, at *2. Still, Infowhyse believed that exceeding its discovery obligations would facilitate Fleetwood's compliance.

By letter dated April 26, 2016, Infowhyse set out why each of its requests was relevant to allegations set forth in the pleadings. (Exhibit I.) Infowhyse's letter provided Fleetwood citations to the relevant paragraphs of the Complaint and/or Counterclaim and described the fact or legal principle that makes the requested documents relevant. Infowhyse's letter also provided legal authority to dispel Fleetwood's misconception that an integration clause bars discovery into

---

[2] Despite frequent and pejorative references by Fleetwood to the fact that Infowhyse served 67 requests for production (and at that time no other discovery), Fleetwood served 47 requests for production, seven compound interrogatories, and 11 requests for admission on Infowhyse on April 26, 2016.

5

pre-SPA documents.

By letter dated May 4, 2016, Fleetwood ignored the entirety of Infowhyse's explanations of why the requested documents were relevant, choosing instead to simply state, again, that they are not. (Exhibit J.) Not once in its seven page letter did Fleetwood acknowledge that Infowhyse's requests were directly traceable to allegations in the pleadings or provisions of the SPA, nor did Fleetwood acknowledge that mindlessly asserting almost every objection allowable under the Federal Rule of Civil Procedure throughout its Responses is an improper and obstructionist discovery tactic. And, most importantly, Fleetwood did not alter its position with respect to any of the 51 requests to which Fleetwood is withholding documents.

That letter further perpetuates Fleetwood's self-determination that because Infowhyse's claims are not viable "as a matter of law," Infowhyse's discovery is irrelevant. Even though Fleetwood has never tested the legal sufficiency of any of Infowhyse's claims by applicable motion, Fleetwood asserts that it is not obligated to produce documents relevant to Infowhyse's claims based on Fleetwood's unilateral decision that those claims ultimately will not succeed. *See, e.g.*, Ex. J at pg. 1 ("As a matter of law, that language bars Infowhyse's fraud claim); pg. 2 ("your client's fraudulent inducement claim is fundamentally flawed, [so] as a matter of law, discovery purportedly related to that claim is disproportionate"); pg. 2 ("your client's tortious interference claim fails as a matter of law, [so] discovery purportedly designed to provide support for that theory is inappropriate"); pg. 3 ("as a matter of law, any such discussions would be irrelevant"); pg. 3 ("such purported representations would be irrelevant as a matter of law"); pg. 6 ("your requests seek extensive documentation that cannot possibly be relevant in light of the pertinent law").

In an e-mail dated May 17, 2016, Infowhyse again inquired into the status of the

documents that Fleetwood represented it would produce — but still had not — in response to requests 22, 29, 56-61, and 67. (Exhibit K.) Infowhyse also indicated its disappointment in Fleetwood's May 4, 2016 letter, which demonstrated only that Fleetwood would not waiver on its legally untenable positions. In a response, on May 17, 2016, Fleetwood reiterated its objections that Infowhyse's requests are irrelevant, disproportionate, legally flawed, and "simply unnecessary." (Exhibit L.) Then, in yet another attempt to stall discovery, Fleetwood proposed a future "mutually agreed date" for the parties to exchange discovery.

Infowhyse rejected that proposal by e-mail on May 19, 2016 and highlighted a pattern of hypocrisy that came to light through Fleetwood's own discovery requests. (Exhibit M.) Despite strenuously objecting to almost all of Infowhyse's requests for production, Fleetwood served *nearly identical* requests for production on April 26, 2016 that seek the same documents that Fleetwood is withholding. Infowhyse's May 19, 2016 e-mail also revisited a number of other points previously discussed by the parties and set forth above.

Fleetwood responded on May 20, 2016 disputing that Fleetwood has taken contradictory positions with respect to discovery, but its explanation of that position is nonsensical. (Exhibit N.) Fleetwood stated that "Infowhyse cannot insist on obtaining that from Fleetwood which [Infowhyse] refuses to provide itself," despite that Infowhyse had never refused to provide a single document to Fleetwood. It then offers a self-serving "compromise": "If [Infowhyse] agree[s] to drop or modify those requests . . . then perhaps we can modify Fleetwood's requests accordingly." Infowhyse is not interested in "dropping" requests for documents to which it is entitled in exchange for Fleetwood "perhaps" conducting discovery in good faith.

Fleetwood will undoubtedly attempt to position Infowhyse as "walking away" from the meet-and-confer process while Fleetwood was willing to continue communicating, a concept that

Fleetwood included in many of its correspondences. That argument is entirely disingenuous. Over the course of three months and nine communications, Fleetwood did not capitulate on even one of its responses or agree to provide even a single additional document. That staunch refusal comes in the face of detailed explanation of each request's relevance and legal significance, a burden that Infowhyse agreed to shift from Fleetwood to itself in the name of cooperation. There is simply nothing more that Infowhyse can do without assistance from Your Honor.

**Legal Standard**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides for liberal discovery. *Ye*, 2016 WL 950948, at *2. Parties are entitled to conduct discovery on any matter that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevancy "is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case, without limitation to the issues raised by the pleadings." *In re Aircrash Disaster Near Roselawn*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). "Discovery is ordinarily allowed even '[i]f there is a *possibility* that [it] may lead to information relevant to the subject matter of the action.'" *In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 WL 1344466, at *1 (N.D. Ill. 2015) (emphasis and alternation in original).

Further, the party resisting production bears the burden of establishing lack of relevance or disproportionality. *See Ye*, 2016 WL 950948, at *2. A party "cannot simply assert that the requests are not proportional without even specifying the burdens that are disproportionate to the benefits." *Halvorsen v. Credit Adjustments Inc.*, No. 15-CV-6228, 2016 WL 1446219, at *4 (N.D. Ill. 2016). The reflexive invocation of boilerplate objections has been deemed improper time and time again by this Court and fails to meet the withholding party's burden. *See Kelley v. Bd. of Educ.*, No. 10-C-7875, 2012 WL 1108135 (N.D. Ill. 2012); *Fudali v. Napolitano*, 283

8

F.R.D. 400, 403 (N.D. Ill. 2012). Fleetwood's generalized objections are insufficient under the federal standards in favor of liberal discovery.

## Analysis

**A. Discovery is not Barred "As a Matter of Law"**

Fleetwood has determined that because Infowhyse's claims will ultimately fail as a matter of law, Fleetwood is not required to produce any documents responsive to those claims. (*See, e.g.*, Ex. J ("Because your client's fraudulent inducement claim is fundamentally flawed, as a matter of law, discovery purportedly related to that claim is disproportionate to the needs of the case and, therefore, improper;" "Since [sic] your client's tortious interference claim fails as a matter of law, discovery purportedly designed to provide support for that theory is inappropriate")). Fleetwood used this position to withhold documents related to 25 of Infowhyse's requests, and that position is unsupportable.

Fleetwood has not taken any action to challenge the legal sufficiency of Infowhyse's allegations. Nonetheless, Fleetwood is withholding discovery based on its unilateral belief that the integration clause in the SPA renders *any* document or communication made before the effective date of the SPA undiscoverable, and thereby voids Infowhyse's fraud claims. This Court has never reached such a conclusion, and the scope of permissible discovery is not driven by one party's perspective of the strength or weakness of a claim. If that were the case, no defendant in any action would need to comply with discovery once that defendant informally disputed the viability of the plaintiff's claims.[3] Rather, the scope of permissible discovery is driven by the pleadings, a point that has been repeatedly made to Fleetwood throughout this

---

[3] Fleetwood also believes that the "economic loss doctrine" bars Infowhyse's tortious interference claim, although that assertion is plainly incorrect. *See Medline Industries, Inc. v. Maersk Medical Ltd.*, 230 F. Supp. 2d 857, 871 (N.D. Ill. 2002) ("Illinois courts have held that the [economic loss] doctrine and its progeny did not abolish causes of action for intentional interference with contract and prospective advantage.").

meet-and-confer process. At present, the Amended Complaint alleges that Infowhyse was fraudulently induced into the SPA based on Fleetwood's misrepresentations as to its prior sales volume and ability to manufacture certain products, among others. Fleetwood denied these allegations in its Answer, but did not legally challenge them. Therefore, Infowhyse needs discovery to prove that those misrepresentations were made and relied upon.

Fleetwood cannot use this discovery motion as a platform to test its theory that Infowhyse's claims are "flawed" "as a matter of law." That theory should have been asserted on a motion under Rule 12 or Rule 56. It is *not* proper on the present motion to compel because the legal sufficiency of Infowhyse's claims is not at issue, and for that reason Infowhyse is loath to even acknowledge this position here. Still, because of Fleetwood's consistent disregard for the posture of this case, Infowhyse is compelled to inform the Court that Fleetwood's position is, in addition being procedurally improper, also legally incorrect.

In *Petrakopoulou v. DHR International, Inc.*, 590 F. Supp. 2d 1013 (N.D. Ill. 2008), this Court examined whether or not the existence of an integration clause and a no-reliance clause automatically precludes an action for fraudulent inducement.[4] The court examined a number of relevant cases and concluded that, not only is it "the general rule in Illinois and elsewhere" that integration clauses do not preclude claims for fraudulent inducement, but also that the existence of a no-reliance clause does not automatically preclude a fraudulent inducement claim. *Id.* at 1017. That holding is the extension of a concurring opinion in *Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000), in which Judge Rovner agreed with the majority that the fraudulent inducement claim in that case was foreclosed, but wrote separately "to avoid the inevitable

---

[4] In its May 4, 2016 letter, Fleetwood claimed this authority was "non-binding," "easily distinguishable," and "misguided" because Infowhyse's claims "are controlled by Illinois state law." The Court in *Petrakopoulou* makes clear that its entire analysis is based on interpretation and application of Illinois law. 590 F. Supp. 2d at 1017.

10

quotes in future briefs characterizing our holding as an automatic rule precluding any damages for fraud based on prior oral statements when a non-reliance clause is included in a written agreement." *Id.* at 398. Rather, Judge Rovner correctly noted that the court's ruling was based on "the facts in th[at] case, involving extensive negotiations." *Id.* Also of note, the *Petrakopoulou* and *Rissman* decisions came on a motion to dismiss and for summary judgment, respectively, where the issue of legal sufficiency was properly before the courts. That is not the case here.

Thus, the facts and circumstances of this case will ultimately determine whether Infowhyse could have relied on Fleetwood's misrepresentations as a matter of law. Those facts and circumstances, in turn, can only be obtained through and substantiated by the discovery process. This Court should order that Fleetwood cease stalling Infowhyse's attempts to progress this case and compel Fleetwood to produce the requested documents.

**B. Fleetwood's Bad Faith is Exemplified by its Own Discovery Requests**

Despite withholding documents based on its objections to 51 of Infowhyse's requests, Fleetwood's discovery requests served April 26, 2016 seek identical documents from identical categories as those requested by Infowhyse. Those parallel requests are set forth in the table attached to this Motion as Exhibit O.

In addition to the examples in that table, and despite Fleetwood's insistence that the no-reliance clause renders the parties' negotiations irrelevant as a matter of law, each of Fleetwood's requests numbers 1-4, 8-11, 13, 15, 16, 20, and 21 seek documents related to the parties' discussions that precipitated the SPA. It is simply impossible to reconcile Fleetwood's vigorous objections to the documents requested by Infowhyse with Fleetwood's demand for the very same documents. Further, Fleetwood on the one hand claims in its May 4, 2016 letter that

11

"discovery purportedly designed to provide support for [Infowhyse's tortious interference claim] is inappropriate," while on the other hand seeks documents in requests 35 and 36 to defend itself from that very claim.

By its May 20, 2016 email, Fleetwood's true motivations have become clear. (Ex. N.) Fleetwood believes that discovery is a tit-for-tat negotiation, in which Fleetwood will lob requests that it believes are irrelevant in retaliation for Infowhyse's requests. Fleetwood's proposed outcome for this strategy is that both parties would "agree to drop or modify" their requests under the guise of compromise, which of course only serves Fleetwood's interests. It is apparent that Fleetwood is conducting the discovery process in bad faith by seeking documents that it previously stated were irrelevant to this litigation and refused to produce to Infowhyse. Fleetwood also engaged in the Rule 37 meet-and-confer process in bad faith by perpetuating baseless objections to Infowhyse's discovery requests while simultaneously requesting the very same discovery from Infowhyse.

By seeking the same documents to which it objects, Fleetwood has admitted the relevance of those requests. The Court should order Fleetwood to produce relevant documents in response to Infowhyse's requests, just as Infowhyse has already agreed — without Court intervention — to produce relevant documents in response to Fleetwood's requests.

### C. Infowhyse's Requests are Relevant & Proportional to the Needs of this Case

Infowhyse propounded 67 specific requests for production with the intention of avoiding this type of dispute. The majority of those requests are narrowly tailored to a specific set of information and, where applicable, individual requests specify the relevant custodians and timeframe. Rather than seek broad, overly burdensome documents such as "all documents referencing, consisting of, or otherwise related to communications between [the parties] from

January 1, 2013 through the present" (as Fleetwood requested in its first request for production), Infowhyse's requests were designed to facilitate Fleetwood's searches and indicate to Fleetwood exactly what type of document Infowhyse was seeking. Infowhyse's April 26, 2016 letter attached as Exhibit I provides a detailed explanation of each request's relevance. Infowhyse will highlight certain of Fleetwood's most egregious refusals to comply here, although Infowhyse directs Your Honor to Exhibit I for a comprehensive description.

A fundamental issue in this case is Fleetwood's sale of three different types of keypads: (1) Reply® branded keypads; (2) OEM branded keypads that could communicate with Reply® branded keypads; and (3) OEM branded keypads that could not communicate with Reply® branded keypads. (Ex. B at ¶79.) The SPA grants Infowhyse the exclusive right to sell Reply® branded keypads, prohibits Fleetwood from continuing to sell OEM branded keypads that could communicate with Reply® branded keypads, and permitted Fleetwood to continue selling OEM branded keypads that could not communicate with Reply® branded keypads. (*Id.*) The Amended Complaint alleges that Fleetwood breached the SPA by improperly selling keypads from the first and second categories to third parties. (*See, e.g.*, Ex. B at ¶¶82, 84-85.) Therefore, Fleetwood's sales of keypads, both Reply® brand and OEM brand, are relevant to this action. Another fundamental issue concerns Fleetwood's sales of both Reply® brand and non-Reply® brand keypads that pre-dated the SPA, which constitute the basis of both the fraudulent inducement and fraudulent misrepresentation claims.

To facilitate discovery on these points, Infowhyse issued narrow requests for production that break down sales for a particular type of keypad in a particular fiscal year. (Ex. D at ##4-15, 21, 23-24.) This information is easily discoverable with little burden to Fleetwood, highly relevant to Infowhyse's claims and damages, and clearly proportionate. Fleetwood is

13

withholding all discovery related to its sales, apparently based on some combination of the four to six objections that Fleetwood levied against every one of Infowhyse's requests. Fleetwood has also declared that "sensitive business information" is somehow undiscoverable, despite the fact that Judge Alonso entered the parties' *agreed* confidentiality order. (ECF dkt. #23.)

Other of Infowhyse's requests seek documents related to specific meetings and specific custodians who attended those meetings. (Ex. D at ##3, 17). Infowhyse alleged that during certain meetings Fleetwood made the misrepresentations that underscore Infowhyse's fraud claims, and Infowhyse alleged that at other meetings Fleetwood admitted that its prior statements were false. Documents related to those meetings, including notes taken during the meeting and e-mails sent regarding the meetings, are specific and well-defined, small in number, and easily obtained by Fleetwood. Fleetwood is withholding documents to requests 3 and 17, based on the same boilerplate objections and Fleetwood's unjustifiable use of the SPA's no-reliance clause to bar discovery.

Requests 18-20 seek any information in Fleetwood's possession related to very specific terms of the SPA, including the purchase price, the term, and certain Fleetwood intellectual property. (Ex. D at ##18-20) Those terms are critical to this case because Infowhyse has alleged that the purchase price and term of the agreement resulted from Fleetwood's fraudulent misrepresentations and, when considered together with Fleetwood's demand that it retain certain intellectual property, demonstrate Fleetwood's scheme to induce Infowhyse into an agreement that was bound to fail. These requests are narrow and easily discoverable by Fleetwood with little to no burden. In response to each, Fleetwood pasted its standard list of objections and stated that it is withholding documents.

Infowhyse alleges that Fleetwood intentionally misrepresented its ability to create new

Reply® brand products at costs at or close to those represented in the SPA. Infowhyse further alleges that over the course of more than a year, Fleetwood continued to misrepresent that ability, while incrementally increasing the anticipated costs until they became commercially unviable. (Ex. B at ¶¶58-78.) Accordingly, requests 30-42 seek specific documents related to Fleetwood's ability and efforts to produce those products, breaking out the particular product, the engineers known to have contributed to the price estimates, the documents that substantiate those estimates, and the relevant timeframes where applicable. (Ex. D) Frankly, Infowhyse could not have provided more tailored requests for information that is prominent in both the SPA and Infowhyse's pleadings. In response to each, Fleetwood inserted its standard list of objections and stated that it is withholding documents.

Finally, Fleetwood employed its standard objections to Infowhyse's request for all documents related to the SPA. Given that the SPA is the most important document in this case, the relevance and proportionality objections are plainly inapplicable. Additionally, the universe of documents related to an agreement that was negotiated less than two years ago over the course of five days is small and the burden to search for those documents is insignificant.

### Conclusion

WHEREFORE, Infowhyse requests that this Court Order Fleetwood to produce documents in response to each request in Infowhyse's First Set of Requests for Production.

Dated: June 13, 2016   Respectfully submitted,
    Infowhyse, GmbH

    By: /s/ Joseph Kish
    One of Plaintiff's Attorneys

Joseph L. Kish – jkish@synergylawgroup.com
Jonathon P. Reinisch – jreinisch@synergylawgroup.com
Synergy Law Group, LLC
730 West Randolph Street, 6th Floor, Chicago, Illinois 60661
(312) 454-0015

15

## RULE 37(a)(1) CERTIFICATION

  I, Joseph L. Kish, certify that I have in good faith conferred with counsel for Defendant and attempted to obtain Defendant's document production without court action. The parties' communications are detailed in Infowhyse's Motion to Compel Fleetwood's Document Production under the heading "The Parties' Extensive Meet-and-Confer Process."


Dated: June 13, 2016          /s/ Joseph Kish
                      Joseph L. Kish


## CERTIFICATE OF SERVICE

  The undersigned certifies that a copy of the Motion to Compel Fleetwood's Document Production was served upon on all counsel of record electronically through the Northern District of Illinois, Eastern Division, CM/ECF system, on June 13, 2016:


                Respectfully Submitted,

                By: /s/ Joseph Kish
                One of Plaintiff's Attorneys


Joseph L. Kish-JKish@synergylawgroup.com
Jonathon P. Reinisch-JReinisch@synergylawgroup.com
Synergy Law Group, L.L.C.
730 West Randolph, 6th Floor
Chicago, Illinois 60661
Telephone: (312) 454-0015
Facsimile: (312) 454-0261